UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SHU-HSING LIN,                                        :
                                                      :
                              Plaintiff,              :        **MEMORANDUM AND ORDER**
                                                      :        18-cv-07042 (DLI) (RLM)
              -against-                                :
                                                      :
UT FREIGHT SERVICE (USA) LTD.; UT                     :
FREIGHT SERVICE LTD.; JOHN HWANG; &                   :
J.J. CHI-HUI HWANG,                                   :
                                                      :
                              Defendants.             :
---------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On December 11, 2018, Shu-Hsing Lin ("Plaintiff") filed a Complaint against UT Freight

Service (USA) Ltd. ("UT USA"), UT Freight Service Ltd. ("UT Taiwan"), John Hwang ("John"),

and J.J. Chi-Hui Hwang ("J.J.") (collectively, "Defendants"), alleging violations of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq. See*, *generally*, Complaint, Dkt. Entry No. 1.

Pursuant to Federal Rule of Civil Procedure 56, Defendants move for summary judgment,

seeking dismissal of this action in its entirety. *See*, Defs.' Mem. of Law in Supp. of Summ. J.

("Defs.' Mot."), Dkt. Entry No. 56-13. Plaintiff opposed the motion. *See*, Plf.'s Mem. of Law in

Opp'n to Defs.' Mot. for Summ. J. ("Plf.'s Opp."), Dkt. Entry No. 57-29. Defendants replied.

*See*, Defs.' Rep. Mem. of Law in Supp. of Summ. J. ("Defs.' Rep."), Dkt. Entry No 58-1. For the

reasons set forth below, the ADEA claims against the individual Defendants are dismissed *sua*

*sponte* and Defendants' motion for summary judgment otherwise is denied in all other respects.

**BACKGROUND**

The following relevant facts are taken from Plaintiff's and Defendants' Local Civil Rule

56.1 statements, depositions, and exhibits.  Unless otherwise noted, these facts are not in dispute.
As it must, the Court has considered only facts recited by Plaintiff and Defendants in their
respective Rule 56.1 statements that are established by admissible evidence and disregarded
conclusory allegations and legal arguments contained therein.  *See*, *Holtz v. Rockefeller & Co.*,
258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no[] citations or where the cited materials do
not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion.")
(internal quotation marks and citations omitted).

UT Taiwan is the parent company of UT USA.  Defs.' Reply 56.1 Statement of Facts ("Rep.
56.1"), Dkt. Entry No. 58, at ¶ 1.  At all relevant times, Defendant John was the Chairman of UT
Taiwan and the President of UT USA.  *Id.* at ¶ 2.  Defendant J.J. was the Vice Executive General
Manager of UT Taiwan and UT USA.  *Id.* at ¶ 3.  In 2015, Plaintiff had worked for UT USA in
the John F. Kennedy ("JFK") Airport office for twenty-eight years.  *Id.* at ¶ 15.  On October 19,
2015, Plaintiff turned sixty-six years old.  *Id.* at ¶ 99.

The human resources department at UT Taiwan was responsible for setting employee
salaries and raises at UT USA.  *Id.* at ¶ 5.  In determining salaries and raises, Defendants would
review average salaries in the relevant industry, employee seniority, and employee performance
grades.  *Id.* at ¶¶ 6-7, 95.  Employees receiving a B rating or higher usually would receive a raise.
*Id.* at ¶ 107.  In July 2015, Plaintiff worked in the accounting department, with duties that covered
accounting, payroll, and human resources.  *Id.* at ¶ 19.  That month, in the course of her job duties,
Plaintiff received a copy of a salary adjustment worksheet ("SAW") for employees at UT USA's
JFK office.  *Id.* at ¶ 26.  The SAW indicated employee salary increases, performance grades, and
seniority levels.  *See*, SAW, Ex. 2 to the Declaration of Andrew Chen ("Chen Decl."), Dkt. Entry
No. 56-4.  According to the SAW, all employees at the JFK office received raises except for

Plaintiff and Frank Wang,[1] both of whom were both turning sixty-six in 2015.  Rep. 56.1 at ¶ 112.

Next to Plaintiff's and Wang's names was the notation "suggest to retire."  *Id.* at ¶¶ 31, 112.

Plaintiff received a performance grade of A+ while Wang received an A.  *Id.* at ¶ 108; SAW.

On July 25, 2015, J.J. had a conversation with Plaintiff in his office regarding her

retirement, during which he instructed her to end her employment with UT USA on October 31,

2015.  Rep. 56.1 at ¶¶ 38, 100.  While the parties dispute what was said in this conversation, the

admissible evidence shows Plaintiff refused to resign and told J.J. that she would continue

working.  *Id.* at ¶¶ 40-41.  As a result, J.J. became angry and ended the conversation.  *Id.* at ¶ 103-

04.  Defendants claim that Plaintiff initiated the conversation regarding retirement, asking for a

severance and to be fraudulently fired so that she could collect unemployment benefits.  *Id.* at ¶

39.  Plaintiff claims that J.J. asked her when she would turn sixty-six years old, gave her a

termination date approximately two weeks after her birthday, and informed her that she would not

receive retirement, pension, or unemployment benefits when she left UT USA.  *Id.* at ¶¶ 100-02.

The parties agree that J.J. began to treat Plaintiff poorly after the July 25th conversation.

*Id.* at ¶¶ 41, 118-19.  For example, J.J. began to pick on Plaintiff, gave her improper work

assignments, yelled at her, insulted her, criticized her work performance, and regularly threatened

to fire her.  *Id.* at ¶¶ 42, 120-21.  J.J. would bang his fists on Plaintiff's desk and yell at her when

he was upset with her, sometimes screaming at her in front of other employees.  *Id.* at ¶¶ 125-26,

130.  The only employees who J.J. screamed at were Plaintiff and Mr. Wang.  *Id.* at ¶ 132.  J.J.

also reminded Plaintiff on at least two subsequent occasions that UT USA wanted her to leave on

October 31, 2015.  *Id.* at ¶ 127.

Plaintiff did not return to work after October 16, 2015, three days before she turned sixty-

---

[1] The parties' submissions also refer to Frank Wang as Frank Wong.  For consistency, the Court will refer to him as Frank Wang.

six, and two weeks before the October 31, 2015 date provided by J.J.  *Id.* at ¶ 64.  Defendants

claim that Plaintiff abruptly quit without notice.  *Id.* at ¶¶ 65-68.  Plaintiff claims that her

mistreatment by J.J. caused her such emotional distress that she could no longer remain at UT

USA.  *Id.* at ¶¶ 133-40.  After Plaintiff stopped working for UT USA, she did not attempt to find

any other work and turned down job offers because of the fear she experienced while working at

UT USA.  *Id.* at ¶ 74.

On or about January 8, 2016, Plaintiff filed a complaint with the New York City

Commission on Human Rights ("NYCCHR"), which was cross-filed with the Equal Employment

Opportunity Commission ("EEOC").  *Id.* at ¶ 155.  Plaintiff named UT USA, J.J., and John in the

NYCCHR complaint, but did not name UT Taiwan.  NYCCHR Materials, Ex. 25 to the

Declaration of Edward Keenan, Dkt. Entry No. 57-25.  Plaintiff admits that she received a right to

sue letter from the EEOC on or about December 7, 2018, which also did not name UT Taiwan.

Complaint at ¶¶ 28, 29.[2]  On December 11, 2018, Plaintiff commenced this action.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all

ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party

opposing summary judgment and determine whether there is a genuine dispute as to a material

fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir.

---

[2] Defendants do not challenge this non-jurisdictional waivable precondition in their motion for summary judgment. *See, Waithe v. City of N.Y.*, 2017 WL 4220466, at *2 (S.D.N.Y. Sept. 21, 2017) (presentation to the EEOC is a waivable precondition to an ADEA claim); *See also, Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (presentation to the EEOC may be waived by the parties or the court).  The Court notes that, even if the claims against UT Taiwan were dismissed, the claims against the other Defendants would proceed, as discussed *infra*.  Accordingly, the Court need not address whether Plaintiff failed to exhaust her administrative remedies as to UT Taiwan.

2007) (internal quotation marks omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating the absence of genuine issues of material fact, "the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993).  The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  Instead, the nonmoving party must affirmatively set out facts showing a genuine issue for trial.  *Anderson*, 477 U.S. at 250. "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Additionally, there are special considerations for district courts in reviewing claims of employment discrimination against the threat of summary judgment.  Where direct evidence of an employer's discriminatory intent is not readily discernible, district courts must scrutinize carefully the available evidence for "circumstantial proof which, if believed, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Indeed, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial . . . [t]here must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

## DISCUSSION

As a preliminary matter, the Court finds that it may rely on Andrew Chen's affidavit to the extent he testified in his capacity as a representative of UT Taiwan based on his review of corporate documents. *See*, *Afroze Textile Indus. (Private) Ltd. v. Ultimate Apparel, Inc.*, 2009 WL 2167839, at *1 n.5 (E.D.N.Y. July 20, 2009) (Bianco, D.J.) (relying on corporate representative's affidavit on a Rule 56 motion to the extent it was based on a review of the corporation's books, records, or other documents, but disregarding conclusory assertions unsupported by a review of corporate records). However, the Court will not rely on testimony submitted on behalf of another individual or related conclusory statements. *See*, *Id.* Thus, the Court will consider statements made regarding the Defendant companies' policies, procedures, documents, and decision making. The Court will not consider unsupported statements made by Mr. Chen on behalf of another individual.

For example, the Court does not accept Defendants' reliance on the testimony of Mr. Chen, John, or J.J. to the extent they attempt to explain the intent of the individual who made the "suggest to retire" notation on the SAW as they lack personal knowledge of the writer's intent. *See*, Rep. 56.1 at ¶ 36. Defendants argue that "suggest to retire" was merely an internal reminder to speak to employees about their retirement plans, not a directive to retire. *Id.*; Defs.' Mot. at 9. Even if the Court considered this speculation, it is belied by John's testimony, given through the aid of an interpreter, that the phrase was a "reminder to retire" and that "[i]n Chinese, we mean to remind to retire. I don't know the difference between remind and suggest." John Deposition Tr., Ex. 6 to the Declaration of Nicole Grunfeld, Dkt. Entry No. 56-8 at 47-48. At best, these conflicting explanations from Defendants' own witnesses and the plain reading of the phrase would create a triable issue of fact as to the writer's intent. For the purposes of summary judgment, the Court resolves this ambiguity in favor of Plaintiff, as it must, and considers this phrase as evidence of an

intent to terminate Plaintiff.  *See*, *McCarthy*, 482 F.3d at 202.

## I.    The ADEA Claims

Under the ADEA, an employer shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).  In analyzing ADEA claims, "a plaintiff must first establish a *prima facie* case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions."  *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016).  If the defendant provides a rationale, "the presumption raised by the *prima facie* case is rebutted and drops from the case."  *Id.*  "[T]he plaintiff then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision."  *Id.* (citation omitted).  "A plaintiff may carry this burden by reference to the same evidence used to establish a *prima facie* case, provided that the evidence admits plausible inferences of pretext."  *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89 (2d Cir. 2019).  Plaintiff retains the burden of persuasion to prove pretext "by a preponderance of the evidence, [and] that age was the 'but-for' cause of the challenged adverse employment action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014).  A court should examine "the entire record to determine whether the plaintiff could satisfy [her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"  *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

To establish a *prima facie* case of age discrimination, Plaintiff must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to

an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). The employer's adverse action must be a "materially adverse change" in the terms and conditions of employment and "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 32 (quoting *Kasner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000), *abrogated on other grounds*, *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (citation omitted). The ADEA does not set forth a "general civility code." *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp.3d 141, 172 (E.D.N.Y. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions." *La Grande v. DeCrescente Distrib. Co., Inc.*, 370 F. Appx. 206, 211 (2d Cir. 2010).

### A. Individual Defendants' Liability

While not raised by Defendants in their motion, it is well established that the ADEA does not provide for individual liability. *See*, *Guerra v. Jones*, 421 Fed. Appx. 15, 16 (2d Cir. 2011); *Cherry v. Toussaint*, 50 F. Appx. 476, 477 (2d Cir. 2002). Accordingly, Plaintiff's ADEA claims against individual Defendants John and J.J. are dismissed *sua sponte*. *See*, *Chen v. Shanghai Café Deluxe, Inc.*, 2019 WL 1447082, at *10 (S.D.N.Y. Mar. 8, 2019) (*sua sponte* dismissing ADEA claims against individual defendants); *Braun v. Admins. for the Professions, Inc.*, 2018 WL 3597504, at *6 n.4 (E.D.N.Y. July 26, 2018) (same); *Saunders v. NYC Dept. of Educ.*, 2010 WL 331679, at *8 (E.D.N.Y. Jan. 19, 2010) ("Plaintiff's Title VII and ADEA claims . . . against the

individual DOE defendants . . . are *sua sponte* dismissed as frivolous").

**B. Age Discrimination**

The Court turns to the remaining ADEA claims against corporate Defendants UT USA and UT Taiwan. The parties agree that Plaintiff satisfies the first two requirements of a *prima facie* case, *i.e.*, that she was within a protected age group as she was above the age of forty, and that she was qualified for her position. *See*, 29 U.S.C. § 631(a); Defs.' Mot. at 6; Plf.'s Opp. at 12. The parties dispute whether Plaintiff suffered an adverse employment action, and whether the circumstances give rise to an inference of discrimination. Plaintiff submits that her denial of a raise, alleged termination, and subsequent mistreatment by J.J. after refusing to retire constitute adverse employment actions.

First, "[t]here is little question that denial of a raise qualifies as an adverse employment action." *Leon v. Dept. of Educ.*, 2017 WL 1157146, at *6 (S.D.N.Y. Mar. 27, 2017) (quoting *Magilton v. Tocco*, 379 F. Supp.2d 495, 503 (S.D.N.Y. 2005)). However, "if the plaintiff can cite no facts suggesting that discretionary pay was awarded as a matter of course or that [she] was otherwise entitled to expect or rely on it, the employer's decision not to award [the pay] does not change the terms or conditions of Plaintiff's employment." *Wilkinson v. New York State*, 2019 WL 5423573, at *9 (E.D.N.Y. Oct. 22, 2019) (citation omitted).

Here, Defendants assert that raises were discretionary, and Plaintiff has not controverted this with admissible evidence. *See*, Rep. 56.1 at ¶ 7. The record shows that Defendants decided to issue raises based on prevailing market rates, seniority, and employee performance grades. *Id.* at ¶¶ 7, 95. It is undisputed that Plaintiff received an A+ evaluation in the period leading up to her denied raise, and that an employee receiving a performance score above a B usually would receive a raise. *Id.* at ¶¶ 108-07. Thus, a trier of fact could find that Plaintiff was entitled to expect a raise

and that her denial was an adverse employment action.  The fact that the only employees denied a raise at the JFK office were over the age of 65, had performance ratings of A or higher, and had a "suggest to retire" notation in the SAW could give rise to an inference of age discrimination.  *See, Id.* at ¶ 111-13.  As such, Plaintiff has met her *prima facie* burden.

The parties disagree as to whether Plaintiff was treated differently from other similarly situated employees.  "Whether two employees are similarly situated ordinarily presents a question of fact for the jury."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).[3]  A "similarly situated employee" is one who is similar to a plaintiff in "all material respects" such as being subjected to the same workplace standards and engaging in similar conduct.  *Id.*  Defendants highlight UT Taiwan employees in offices outside of the United States who were below the age of forty and did not receive raises.  Defs.' Mot. at 8.  In support, Defendants offer a spreadsheet of raises for UT Taiwan employees.  UT Taiwan Spreadsheet, Ex. 3 to Chen Decl. Dkt. Entry No. 57-3.  Plaintiff argues that employees from those overseas offices are not similarly situated to her and should not be considered.  Plf.'s Opp. at 17-18.  The Court agrees to the extent that these employees were not within the protected class.  Notably, seniority was a factor to be considered in granting raises.  The UT Taiwan Spreadsheet lacks key information, such as employee performance grades, a section where notations such as "suggest to retire" would be written, and an English translation for the positions of each employee.  Remarkably, the UT Taiwan Spreadsheet covers employees for UT Taiwan, not UT USA, which are separate entities operating in different countries.  Based on the record presented, there is insufficient evidence upon which the Court can decide whether UT Taiwan employees are similarly situated to Plaintiff.

In response to Plaintiff's *prima facie* case, Defendants claim that Plaintiff was not denied

---

[3] While *Graham* considered a Title VII claim, the Second Circuit analyzes ADEA claims "under the same framework as claims brought pursuant to Title VII."  *Schnabel*, 232 F.3d at 87.

a raise due to her age, but because she was paid higher than other similarly situated employees in her position. Defs.' Mot. at 8. Even assuming that this is a legitimate non-discriminatory reason for denying Plaintiff a raise, the Court finds that Plaintiff has met her burden of demonstrating but-for causation. In addition to the reasons giving rise to an inference of discrimination, J.J. told Plaintiff her last day of work would be about two weeks after she turned sixty-six, and J.J. indisputably mistreated Plaintiff following her refusal to retire. *See,* Rep. 56.1 at ¶¶ 101-04, 118-32. Taken together, these circumstances could permit a trier of fact to find that age discrimination was the but-for cause of Plaintiff's denial of a raise. Summary judgment is denied as to this theory of discrimination.

Second, there is a disputed issue of fact as to whether Plaintiff quit or was terminated by Defendants. The parties do not dispute that J.J. told Plaintiff that her last day of work would be October 31, 2015. *Id.* at ¶¶ 38, 101. However, Defendants also claim that they never fired Plaintiff, and that J.J. only asked Plaintiff about her retirement plans for the purposes of replacement planning. *Id.* at ¶ 37. This issue of fact prevents the Court from deciding whether Plaintiff was fired, and if so, whether the decision was based on her age.

Third, Plaintiff claims that she was mistreated by J.J. following their conversation regarding her retirement. The duration and extent to which Plaintiff was mistreated is disputed. *See*, Rep. 56.1 at ¶¶ 57, 63, 129. Even assuming that the individual actions of J.J., on their own, do not constitute adverse employment actions, they could be considered adverse under certain circumstances. Such a circumstance would exist if J.J. terminated Plaintiff's employment due to her age, which is a disputed issue of fact. Accordingly, summary judgment as to Plaintiff's mistreatment is inappropriate because there first must be a factual finding as to her termination.

### C.  Hostile Work Environment

"An actionable discrimination claim based on hostile work environment under the ADEA is one for which the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (internal quotations and citation omitted).  "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Id.*  In evaluating such a claim, courts "are required to look to the record as a whole and assess the totality of the circumstances." *Gorzynski*, 596 F.3d at 102.

Here, it is undisputed that J.J. treated Plaintiff poorly after their discussion regarding her retirement.  However, as discussed, *supra*, an issue of fact exists as to what happened during that conversation, whether Plaintiff was fired or quit, whether any termination was motivated by Plaintiff's age, and the scope of the alleged mistreatment.  These contextual questions must be resolved before addressing whether Plaintiff was subjected to any hostility because of her age.  Whether Plaintiff was given a termination date during the July 25th conversation is also relevant to whether Plaintiff's work conditions were sufficiently altered following that conversation.  Accordingly, Defendants' motion as to the hostile work environment claim is denied.

### D.  Lost Wages

"Damages are an essential element of an ADEA claim, and in the absence of an available remedy, the ADEA claim must be dismissed." *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp.2d 176, 205 (E.D.N.Y. 2010) (citation omitted).  "The only remedies available [to an ADEA plaintiff] are make-whole remedies such as back pay, front pay and reinstatement." *Hatter v. New York City Housing Auth.*, 165 F.3d 14, 1 (2d Cir. 1998).  "An ADEA plaintiff has a duty to mitigate damages by using reasonable care and diligence in seeking suitable alternative employment."

*Bonura v. Chase Manhattan Bank, N.A.*, 629 F. Supp. 353, 356 (S.D.N.Y. 1986).  An employer may show that a plaintiff failed to meet her duty to mitigate "if it can prove that the employee made no reasonable efforts to seek [substantially comparable] employment."  *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998).  An employer first must demonstrate that "the plaintiff made no reasonable efforts to seek alternative employment."  *Broadnax v. City of New Haven*, 415 F.3d 265, 270 (2d Cir. 2005).

However, failure to seek employment is not inherently unreasonable.  *See*, *Walsh v. Scarsdale Union Free Sch. Dist.*, 2019 WL 6789581, at *7 (S.D.N.Y. Dec. 12, 2019) (an employee's retirement is not dispositive of the question of damages); *Ramey v. District 141, Intern. Assoc. of Machinists and Aerospace Workers*, 2010 WL 3619708, at *7 (E.D.N.Y. Sept. 10, 2010) (not unreasonable for plaintiffs, each within a few years of retirement, not to have undertaken a job search).  In other words, "[r]easonableness turns on consideration of the characteristics of the individual plaintiff, which includes their age and the job market they face."  *Ramey*, 2010 WL 3619708, at *5.

Here, it is uncontroverted that, after ending employment with Defendants, Plaintiff did not attempt to seek other work and refused job offers.  *See*, Rep. 56.1 at ¶ 74.  Plaintiff's assertion to the contrary is unsupported by admissible evidence.  *See*, Plf.'s Opp. at 25.  However, it is clear that Plaintiff was sixty-six years old at the time she stopped working for Defendants, is not a native English speaker, and was suffering from the emotional aftereffects of working for J.J.  While Plaintiff's failure to seek alternative employment and her rejection of job offers are damaging, they are not dispositive.  Moreover, the parties have not cited to any evidence as to the suitability of the jobs that were rejected by Plaintiff or the job market Plaintiff faced.  The reasonableness of Plaintiff's actions is a question of fact that a jury must decide.  Therefore, Defendants' motion as

to lost wages is denied.

## II.      **The NYSHRL and NYCHRL Claims**

Defendants ask the Court not to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims in the event the Court dismisses the ADEA claims.  Defendants raise no other objections to Plaintiff's state law claims.  Notably, "[a]ge discrimination claims brought pursuant to the NYSHRL and the NYCHRL are analyzed under the ADEA framework." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009).  Since Plaintiff's ADEA claims survive summary judgment, the related state law claims also survive.  Accordingly, the motion for summary judgment on Plaintiff's NYSHRL and NYCHRL claims is denied.

## <u>CONCLUSION</u>

For the reasons set forth above, the ADEA claims against individual Defendants John Hwang and J.J. Chi-Hui Hwang are dismissed, and Defendants' motion for summary judgment is denied in all other respects.


SO ORDERED.

Dated: Brooklyn, New York
       March 14, 2022


                                        _____
                                                  /s/
                                        DORA L. IRIZARRY
                                        United States District Judge